# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

RANDALL T. MCARTY,
ADC #101565                                                                                          PLAINTIFF

5:14CV00037-JLH-JTK

RAY HOBBS, et al.                                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I. Introduction

Plaintiff Randall McArty is a state inmate incarcerated at the Ouachita River Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging Defendants failed to protect him from an attack by another inmate while he was incarcerated at the Maximum Security Unit in June, 2012. Plaintiff asks for monetary and injunctive relief.

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 50), to which Plaintiff responded (Doc. Nos. 57, 58). Pursuant to this Court's March 13, 2015 Order (Doc. No. 59), Defendants filed a Reply (Doc. No. 61), which directed them to provide to the Court, under seal, certain information as requested by Plaintiff (Doc. No. 64).

### II. Complaint

In his Amended Complaint, Plaintiff states that in June, 2012, he was classified as a medium-security inmate and was housed in an open dormitory-style barracks with high security inmates and

gang members. (Doc. No. 5, p. 14) He reported the theft of his radio to Defendant Callaway the beginning of the month, and submitted a stolen property report. (Id., p. 14) Defendants Williams and Outlaw also were aware of the incident, and Outlaw and Straughn reviewed the video of the date of the incident to determine the identity of the thief. (Id., p. 15) After the incident, however, Plaintiff was not moved to another barracks. (Id.)

Soon after Plaintiff filed the stolen property report, Defendants Straughn, Outlaw, and Williams, ordered that urinalysis tests be conducted on six gang member inmates who were housed in his barracks, which caused Plaintiff to look like an informant. (Id., pp. 16-18) As a result, on June 14, 2012, Plaintiff was beaten while he slept, by inmate Brian Winston, resulting in permanent physical injury. (Id., pp. 19-20)

Officer Owens was the sole guard for four open dormitories on the date of the attack and Defendant Adkins was the immediate area supervisor. (Id., pp. 20-21) Plaintiff claims the open dormitories were understaffed and in violation of Smith v. Lockhart, 103 F.3d 637 (8th Cir. 1996). (Id., p. 22) He asks for monetary relief from Defendants, together with an injunction preventing them from violating staffing and classification requirements. (Id., pp. 26-27)

### III. Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d

1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.   Official Capacity Liability

The Court agrees with Defendants that sovereign immunity requires dismissal of Plaintiff's monetary claims against them in their official capacities. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 755 (8th Cir. 1997).

### B.   Exhaustion

#### 1.   Defendants' Motion

Defendants Adkins and Callaway ask that Plaintiff's claims against them be dismissed, for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, and the ADC grievance procedure, Administrative Directive (AD) 12-16 (Doc. No. 50-6). Defendants state that the grievance procedure requires inmates to specifically name the individuals involved in the incidents at issue, and exhaust a grievance through all steps of the process prior to filing a federal court lawsuit. (Id., pp. 5, 18) In addition, Defendants refer to case law which requires an inmate to exhaust administrative remedies in accordance with the institution's procedural requirements. Jones v. Bock, 549 U.S. 199, 218 (2007).

Defendants present to the Court a grievance Plaintiff filed and exhausted about the incident

at issue, MX-12-1918 (Doc. No. 50-5). In this grievance, Plaintiff alleged that he was attacked by inmate Winston about 3 a.m. on June 14, 2012, that the doors to the barracks were locked, and that no officer was present on the floor at the time. (Id.) He also stated that officers Akins (Adkins), Owens, and an unknown male officer, were in the main control booth of the area, and that administrators Straughn, Outlaw, Williams, and others subjected him to cruel and unusual punishment by permitting the assault to occur. (Id.) Based on this grievance, Defendants state that Plaintiff did not exhaust his remedies as to Defendant Callaway, because he was not named in the grievance, and as to Defendant Adkins, because Plaintiff did not allege any wrongdoing by her in the grievance. Defendants cite in support Burns v. Eaton, where the Court held an inmate failed to exhaust his remedies when he did not identify one of the defendants in his grievance or otherwise complain about his actions. 752 F.3d 1136, 1141-2 (8th Cir. 2014).

### 2. Plaintiff's Response

Plaintiff responds by stating that his mention of Defendant Adkins in the grievance was sufficient for purposes of exhaustion, since he complained that she was in the control booth instead of on the floor of the barracks. In addition, he states that he attempted to exhaust a grievance against Defendant Callaway, MX- 12-3115, but that it was rejected as untimely. (Doc. No. 58, pp. 30-33) He also claims he filed several other grievances which were accepted; however, officials responded that the issues were previously addressed in MX-12-1918. Based on these rejections, he claims the grievance process was not an available remedy as set forth in the PLRA.

### 3. Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

> confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. at 218.

In Burns v. Eaton, the Court held that an inmate failed to exhaust his administrative remedies as to a defendant who was involved in the incident at issue, but who was not identified in the grievance the inmate filed about the incident. 752 F.3d at 1141. The Court noted, "Burns [inmate plaintiff] did not name White or complain that he was not allowed to wash off the pepper

spray....ADC was not asked to evaluate the conduct of White or the distinct § 1983 claims first asserted by Burns in his amended complaint.  Although Eaton and White were both involved in the incident, they had different responsibilities and took different actions." Id.

As noted by Defendants, the ADC grievance policy in effect at the time of the attack on Plaintiff was AD 12-16, which specifically instructs inmates to "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate..." (Doc. No. 50-6).

In this case, although Plaintiff did name Defendant Adkins in his grievance, Defendants state he did not complain about any of her conduct or actions, and merely mentioned her presence at the time.  However, she was named in the grievance in the context of Plaintiff's statement that "the doors were locked to the Bks..and no officer was on the floor at the time.  In fact, they were a Sgt. Akins [Adkins] and Co. Owens and an unknown male officer setting in the main control booth of Bks. 9-12 area." (Doc. No. 58, p. 25).  The Warden responded, "After a perusal of all the documents related to the incident in question, including the video footage, I have found no evidence of dereliction of duty on the part of staff." (Id., p. 26)  Based on such, the Court finds that Plaintiff adequately named Adkins and referred to her alleged improper conduct in the grievance, and that the ADC evaluated the conduct of all the staff in response.  Therefore, the Court finds that Plaintiff exhausted his remedies as to Defendant Adkins.

However, the Court agrees with Defendant Callaway that Plaintiff did not exhaust his remedies as to the claims against him.  Plaintiff did not name Defendant Callaway or refer to any

of his actions in the first grievance he filed, MX-12-1918.[1] A grievance naming Callaway which was filed on November 1, 2012, was not decided on the merits, and therefore, Plaintiff's claim against Callaway was not exhausted. Although Plaintiff claims that administrative remedies were not available to him because of his hospitalization following the attack and his transfer to another Unit, it does not explain why he did not name Callaway in the first grievance. In addition, Plaintiff filed several other grievances about the incident in August 2012, while still at the Maximum Security Unit, yet did not mention Callaway. (Doc. No. 58, pp. 67-97). Therefore, the Court finds that remedies were available to Plaintiff, but that he did not pursue or exhaust them with respect to his claim against Defendant Callaway.

### C. Qualified Immunity

Defendants ask the Court to grant them qualified immunity from liability with respect to Plaintiff's monetary claims against them in their individual capacities. Qualified immunity protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

---

[1] Plaintiff also admitted in his deposition testimony that Defendant Callaway's only involvement concerned his receipt of Plaintiff's stolen property report. (Doc. No. 50-1, p. 21)

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

In order to support a claim against Defendants for failure to protect, Plaintiff must prove that he was "'incarcerated under conditions posing a substantial risk of serious harm,'" and that Defendants knew of and disregarded the risk. Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Furthermore, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Id. (quoting Farmer, 511U.S. at 837). Finally, "[a] single incident or series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability." Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989).

1.   **Failure to adequately protect and respond**

Plaintiff claims Defendants were placed on notice of a threat of harm to him when he submitted the stolen property report about the theft of his radio to Defendant Callaway, on June 2, 2012 (Doc. Nos. 5, 50-1, pp. 16-18). According to Plaintiff's deposition testimony, he did not

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

accuse inmate Winston or any other inmate of the theft, but submitted the report to Callaway, and later reviewed a video tape of the barracks with Defendant Outlaw. (Doc. No. 50-1, pp. 16-21) However, he did not see anyone on the videotape steal his radio. (Id., p. 21) He had lived in the barracks for about two years prior to the attack, with no problems or incidents, and inmate Winston came to the barracks about a month prior, after being housed in administrative segregation. (Id., pp. 11, 15) Plaintiff stated that he never really spoke to Winston, and the only encounter between them occurred when Plaintiff's dog jumped across Winston's bed one day, but that Plaintiff apologized and Winston did not seem bothered by it. (Id., p. 14) Plaintiff woke up with blood on his face in the middle of the night on June 14, 2012, and saw Winston walking away from him. (Id., p. 25) Plaintiff does not remember the beating. (Id.)

Defendant Williams submitted an affidavit stating that Plaintiff and Winston were housed in 11 Barracks, which can accommodate twenty-five inmates, and on June 14, 2012, no more than twenty-five inmates were assigned there. (Doc. No. 50-2, p. 1) That evening, Defendant Adkins was the supervising officer, Officer Owens was a floor officer and Officer Robinson was assigned to the control booth. (Id., p. 2) A security log kept for that time period shows that regular checks were conducted at 12:17 a.m., 12:29 a.m., 1:28 a.m., 1:37 a.m., 2:14 a.m., 2:29 a.m., and 3:08 a.m. (Id., pp. 3-4) Inmate Winston worked in the kitchen from 1:15 a.m. until 2:10 a.m. (Id., pp. 4-5) According to the incident reports submitted by Officers Adkins, Owens, and Robinson, Owens conducted a security check around 3:07 a.m., and saw inmate Winston standing over Plaintiff and hitting him with an object. (Doc. No. 50-3, p. 4) Owens notified Adkins and all available officers arrived to take Winston into custody and take Plaintiff to the infirmary. (Id.)

Plaintiff does not dispute these facts, and provides no evidence to link the stolen radio

incident to the attack by inmate Winston. He admitted that he did not have any problems with fellow inmates and did not specifically accuse anyone of stealing his radio. He also stated that he spoke to Winston only once, and that there was no indication of a problem between them. Although he speculates that gang members may have considered him a snitch because six inmates were required to submit to urinalysis tests on early June, he provides no evidence linking those individuals to Winston and admits he received no threats of harm.

Therefore, based on all the evidence presented, the Court finds that Plaintiff's allegations do not support a finding of a constitutional violation. He provides no evidence to support a finding that Defendants knew he was incarcerated under conditions posing a substantial risk of harm, nor does he provide evidence that anyone knew of or disregarded a risk to him. Jensen v. Clarke, 94 F.3d at 1197. The allegation of the stolen radio does not support a finding that such a risk existed. Therefore, no reasonable person in Defendants' positions would have known that their actions were unlawful.

### 2. Improper Staffing and improper placement

Plaintiff also alleges the barracks in which he was housed was not properly staffed to ensure his safety, and that Defendants violated his rights by housing him together with Winston and others who were more dangerous and assigned to higher custody levels. He claims inmates are to be assigned to the least restrictive custody level and that as a medium custody level inmate, he should not have been housed with Winston, a high security custody inmate. He also states that Defendants admitted overcrowding at the time of the attack.

According to Defendant Williams' affidavit, on June 14, 2012, the barracks in which Plaintiff was housed was not overcrowded, and no more than twenty-five inmates were assigned to that

barracks at that time. (Doc. No. 50-2, p. 1) The discovery response to which Plaintiff refers as an admission of overcrowding was a response to his request for the full capacity of the prison system. (Doc. No. 58, p. 125) Defendants' response was that the total number of inmates housed in the prison system on June 14, 2012, was 1,266, which was over capacity by four inmates. (Id.) Williams also states in the affidavit that Plaintiff's barracks was one of four barracks in Zone 5 of the Unit, and was located in general population where better-behaved inmates were housed. (Doc. No. 50-2, p. 2) On June 14, 2012, thirty-four personnel were assigned to Zone 5, including four supervisors. (Id.) As noted earlier, regular security checks were conducted, according to the security log. (Id.)

Initially, the Court finds misplaced Plaintiff's claim that Defendants were in violation of Smith v. Lockhart, 103 F.3d 637 (8th Cir. 1996). That case concerned the conditions of the open barracks at the Cummins Unit in the 1990s, where supervision was lacking and inmate violence was common. Id. at 645. It also followed other cases challenging conditions of confinement at the Cumminst Unit, beginning in the 1960s. See Hutto v. Finney, 437 U.S. 678 681 (1978), and Finney v. Mabry, 546 F.Supp. 628, 629-30, 639-40 (E.D.Ark. 1982). In contrast, the present lawsuit concerns a general population barracks at the Maximum Security Unit, where no more than twenty-five inmates were housed together, and where Plaintiff had experienced no problems or trouble in the two years he lived there. (Doc. No. 15-1, p. 15) In addition, undisputed evidence presented by Defendants shows that the Barracks was staffed within normal levels on June 14, 2012, and security logs show that regular checks were made. The incident reports also reflect that officers acted immediately upon discovering inmate Winston striking Plaintiff, and Winston was restrained and Plaintiff was immediately taken to the hospital. Therefore, the Court finds no evidence to support

Plaintiff's claim that the Barracks was not properly staffed on the date of the incident or that Winston's attack on him was the result of improper staffing.

Furthermore, the Court finds that no reasonable person would find that Defendants' actions in housing Plaintiff in the barracks violated his Constitutional rights. Pursuant to Plaintiff's request, the Court reviewed, in camera, records setting forth the classification, custody, and disciplinary history for inmate Winston and the Plaintiff. Having thoroughly reviewed those records, the Court finds no evidence of prior recent violent history of inmate Winston which would have placed Defendants on notice of a risk of harm to Plaintiff or any other inmate. In addition, the Court notes that both inmates are incarcerated for the crime of murder, and at the time, both inmates were classified at a similar level. Furthermore, the inmates were appropriately housed in accordance with ADC Administrative Directive 12-15, which provides that male inmates serving sentences of death, life without parole or life, are to be assigned to certain Units, including the Maximum Security Unit. (Doc. No. 61-2) And, both Plaintiff and inmate Winston were appropriately assigned to a Unit containing an open dormitory facility, based on their custody and classification levels. (Doc. No. 5, p. 49; Doc. No. 64).

In conclusion, the Court finds that Defendants acted reasonably under the circumstances. No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 50) be GRANTED.

2. Plaintiff's Complaint against Defendant Callaway be DISMISSED without

prejudice, for failure to exhaust administrative remedies.

3. Plaintiff's Complaint against the remaining Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 8th day of April, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE